UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

Plaintiff,

Case No. 05-cr-146-pp

v.

MARK ANTHONY CUBIE,

Defendant.

**ORDER GRANTING DEFENDANT'S MOTION FOR A REDUCED SENTENCE UNDER THE FIRST STEP ACT OF 2018 (DKT. NO. 819)**

On October 29, 2007, having been in custody for two and a half years, the defendant pled guilty to conspiring to distribute cocaine and crack in violation of 21 U.S.C. §§841(a)(1) and 846 and carrying a firearm during and in relation to a drug trafficking crime, 18 U.S.C. §924(c)(1)(A)(1). Dkt. No. 475; Dkt. No. 819 at 1. Judge Charles N. Clevert, Jr. sentenced the defendant to serve 235 months on the drug charges and sixty months consecutive on the gun charge for a total sentence of 295 months in custody. Dkt. No. 572, 579. The defendant appealed, dkt. no. 580, and the Seventh Circuit affirmed the conviction on December 9, 2010, dkt. no. 682. On July 20, 2015, after the U.S. Sentencing Commission adjusted the crack cocaine guidelines, this court granted the defendant's request to reduce his sentence and reduced the sentence to 248 months. Dkt. No. 776.

The conspiracy to which the defendant pled involved five kilograms or more of powder cocaine and fifty grams or more of crack; at that time, 21

U.S.C. §841(b)(1)(A) mandated a ten-year mandatory minimum sentence for those amounts. Section 404 of the First Step Act of 2018 made retroactive to offenses committed prior to 2010 the Fair Sentencing Act of 2010, which reduced the mandatory minimum for crack so that possession of fifty grams or more would result in a five-year mandatory minimum and a maximum of forty years.

The defendant meets the criteria for a reduced sentence under the First Step Act. His offense was committed before August 3, 2010 (the effective date of the Fair Sentencing Act). He hasn't been sentenced or resentenced under that statute. He hasn't previously filed a request for a reduction under the First Step Act.

The defendant filed his motion for a First Step Act reduction on February 7, 2020. Dkt. No. 819. On March 12, 2020, the government filed a response opposing the motion. Dkt. No. 824. The government does not argue that the defendant is not eligible for a reduction under the statute, acknowledging that this court and others have concluded that similarly situated defendants are eligible. Id. at 1-2. Instead, the government argues that the court should exercise its discretion and refuse to reduce the defendant's sentence for several reasons. First, the government argues that the defendant's guideline range would be the same under the First Step Act, because of the total drug weight. Id. at 2. Second, it notes that the defendant was convicted of a conspiracy involving significant amounts of drugs, that he was the leader of that conspiracy, that it operated for over a year and that it involved several subjects

and drug houses in the inner city. Id. at 3. The government notes that the defendant had a prior history of drug dealing, albeit predating his participation in this offense by some ten years. Id. The government points out that when the defendant was sentenced, the guidelines were no longer mandatory; Judge Clevert could have imposed a below-guidelines sentence, had he thought it appropriate. Id. The government refers the court to an incident in which the defendant threatened violence against a woman who had stolen drugs and drug money and argues that this had a significant impact on Judge Clevert's decision to impose a guidelines sentence. Id.

The government also says that the defendant's threat to the woman "set in motion a chain of events" in which the defendant "called in the co-conspirator who killed Benion to rectify the situation." Dkt. No. 824 at 3. There was discussion of the death of this person named Benion at sentencing, but as the court has explained in a different order, Judge Clevert made specific statements that he was not considering the death in calculating the defendant's advisory guideline range, and he did not accept the government's invitation to sentence the defendant at the high end of the range as a result of the death. The government itself submitted a portion of the sentencing transcript in which Judge Clevert said that he was "not utilizing the Benion death as a factor in sentencing in this matter." Dkt. No. 824-1 at 1. When the government asked Judge Clevert not to take mention of the Benion death out of the PSR, Judge Clevert replied, "I can certainly include that in the Judgment of Conviction so that it is quickly apparent that the Benion was not a sentencing

factor in this case." Id. The judge also "hastened to add," however, that "the Court does consider threats concerning Miss Long and her son factors that have a bearing on his sentence." Id. Judge Clevert found that the defendant was "inclined toward violence" and "was prepared to use a gun to facilitate his drug crimes." Id. at 4-6. The government also presented a large chunk of the sentencing transcript describing the people the defendant manipulated and controlled in carrying out the conspiracy, particularly in relation to retrieving the stolen money. Dkt. No. 824-2.

The defendant responds that he has been incarcerated since May 2005—almost fifteen years. Dkt. No. 829 at 2. He says that he has had no "disciplinary write-ups" in that time, is at a low-security facility, has worked, attended classes, paid his special assessment and been "a model inmate." Id. The defense reiterates that before becoming involved in the offense of conviction, the defendant had lived a crime-free life for over a decade and had a relatively minor criminal history category of II. Id. He'd owned his own business and had done community service. Id. at 3.

As to the government's allegations of violence, defense counsel notes that the PSR does not reveal that the *defendant* ever threatened or harmed anyone or directed anyone else to do so. Id. at 3-4. The defendant notes that his prior criminal history was not violent. Id. at 4. The defendant admits that his crime was a serious one—putting large amounts of drugs on the street over an extended period. He argues, however, that he has paid a substantial price for that offense. Id.

Finally, in his reply brief, the defendant raised the issue that preoccupies the world: the rapid spread of the COVID-19 virus. Id. at 5. The defendant indicates that he has had diabetes for decades, has chronic high blood pressure and takes multiple medications. Id. He also indicates that he is fifty-four years old. Id. The defendant argues that these factors put him at great risk for complications if he were to contract the virus. Id. In a subsequent letter to the court, defense counsel notified the court that on March 31, 2020, the Bureau of Prisons confirmed two cases of COVID-19 in inmates at the facility where the defendant is incarcerated. Dkt. No. 830.

The court will grant the defendant's motion. Reviewing the §3553(a) factors, there is no question that the nature of the defendant's offense was serious. He sold drugs. He sold a lot of drugs. He sold them over a long period of time. He appears to have utilized several people to sell those drugs, and he used guns to protect that enterprise. But there were positives about the defendant's history and characteristics even before he began serving his federal sentence. He had not been convicted in ten years and had a relatively minor criminal history. His descent into this offense appears to have been triggered, in part, by the death of a beloved family member. He had legitimate work and had done valuable community service. Since being incarcerated, he has completed several courses and programs. Dkt. No. 819-3.

The defendant has plans for what he wants to do when he is released. Dkt. No. 819-4. Given the new world we all find ourselves in, he likely will have to postpone some of these plans. But he has shown that he can support

himself legitimately by the work he was doing before he became involved in the drug world in 2004; hopefully, he can do so again.

The defendant has served a very long time—fifteen years. It is hard for the court to conclude than another two and a half years or so will impress something on the defendant that the past fifteen have not, or that it will further deter him or others from committing similar crimes, or that it will provide additional protection for the public. At a time when law enforcement and judicial authorities around the country are considering whether particular defendants need to be confined, the court determines that there is no longer a need for this defendant to be confined.

The court **GRANTS** the defendant's Motion for a Reduced Sentence under the First Step Act of 2018. Dkt. No. 819.

The court **VACATES** the judgment entered on December 29, 2008. Dkt. No. 579. The court will enter an amended judgment, that will take the place of the December 29, 2008 judgment and will supersede the reduced sentence imposed on July 20, 2015 as a result of a change in the sentencing guidelines (Dkt. No. 776).

The court **ORDERS** that the defendant is committed to the custody of the Bureau of Prisons for a term of **one hundred forty-nine (149) months** as to Count One of the third superseding indictment and **sixty (60) months** as to Count Five of the third superseding indictment, to run consecutively with the sentence imposed on Count One of the third superseding indictment, for a total sentence of **two hundred nine (209) months**.

Upon release from imprisonment, the defendant shall be placed on supervised release for **five (5) years** as to Count One of the third superseding indictment and **five (5) years** as to Count Five of the third superseding indictment, to run concurrently with each other, for a total term of **five (5) years** of supervised release.

The court **IMPOSES** the conditions of release imposed by Judge Clevert in the now-vacated December 29, 2008 judgment. The court **ORDERS** that if the defendant believes the court needs to modify any of those conditions due to changes in the law or changes in the defendant's circumstances, he may file a motion asking the court to modify the conditions (identifying the particular conditions he is asking the court to modify, and describing the requested modifications).

The court **ORDERS** that within one-hundred eighty (180) days of the defendant's release from custody, the defendant must work with his probation officer to make an appointment to meet with Judge Pepper for an informal office meeting to discuss his adjustment to supervision, on the condition that the national and local emergency orders restricting travel and meetings relating to the COVID-19 virus no longer are in effect. If those restrictions remain in effect, the defendant may satisfy this condition by arranging to meet with the

court within one-hundred eighty (180) days of the date on which no such orders remain in effect.

The court will enter an amended judgment reflecting this sentence.

Dated in Milwaukee, Wisconsin this 3rd day of April, 2020.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**